UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROSE DAVIS as Personal Representative of the Estate of RENEE L. DAVIS, deceased; B.M., by and through her guardian *ad litem* Michael B. Smith; R.M., by and through her guardian *ad litem* Michael B. Smith; T.B., by and through her guardian *ad litem* Michael B. Smith; <br><br> Plaintiff, <br><br> v. <br><br> KING COUNTY, a political subdivision of the State of Washington; JOHN URQUHART, in his personal capacity; JASON STANLEY, in his personal capacity; KEVIN COMPTON, in his personal capacity; STEVE KEENEY, in his personal capacity; SCOTT SOMERS, in his personal capacity; TIMOTHY LEWIS, in his personal capacity; NICHOLAS PRITCHETT, in his personal capacity; King County Sheriff's Office; and JOHN DOES 1-10, in their personal capacities, <br><br> Defendants. | NO. _____ <br><br> **COMPLAINT** <br><br> JURY DEMANDED |

COMES NOW the above-named Plaintiff Rose Davis, as personal representative of the Estate of Renee Davis, and B.M., R.M,. and T.B., by and through their attorneys of record, and by way of claim allege upon personal knowledge and upon information and belief, as follows:

COMPLAINT - 1

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

# I. PARTIES

1. Plaintiff ROSE DAVIS is the Personal Representative of the Estate of her sister, RENEE DAVIS. Plaintiff brings all claims available to the Estate of Renee Davis, and all beneficiaries under federal law, including her surviving minor children, B.M., T.B., and R.M.

2. Plaintiff T.B. is a surviving minor child of Renee Davis. Plaintiff brings claims in her personal capacity under federal law by and through her guardian *ad litem* Michael B. Smith.

3. Plaintiff R.M. is a surviving minor child of Renee Davis. Plaintiff brings claims in her personal capacity under federal law by and through her guardian *ad litem* Michael B. Smith.

4. Plaintiff R.M. is a surviving minor child of Renee Davis. Plaintiff brings claims in her personal capacity under federal law by and through her guardian *ad litem* Michael B. Smith.

5. Defendant KING COUNTY is a political subdivision of the State of Washington. King County has various departments, including but not limited to the King County Sheriff's Office ("KCSO"). The KCSO is responsible for providing law enforcement services within King County and on the Muckleshoot Indian Reservation. King County is, and was at all times mentioned herein, responsible for the actions or inactions, and the policies, procedures, and practices/customs of KCSO and its employees, including, but not limited to, Defendants John Urquhart, Jason Stanley, Kevin Compton, Steve Keeny, and Scott Somers ("Supervising/Policymaking Defendants"), as well as Deputy Nicholas Pritchett and Deputy Timothy Lewis ("Defendant Deputies"). At all times material to this lawsuit, Supervising/Policymaking Defendants and Defendant Deputies were acting within the course and scope of their employment.

COMPLAINT - 2

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

6.  Defendant JOHN URQUHART was responsible for formulating and implementing KCSO's policies, procedures, and/or established practices and/or ensuring that its officers are properly and adequately trained.  Defendant Urquhart was responsible for the managerial decisions as they relate to KCSO's employees and/or agents, including subordinate Supervising/Policymaking Defendants and Defendant Deputies.  Defendant Urquhart's acts and omissions were, at all times alleged, affirmatively linked to the behavior of subordinate Supervising/Policymaking Defendants and Defendant Deputies, in the sense that he encouraged, condoned, and/or acquiesced in their acts, omissions, and established practices.

7.  Defendant JASON STANLEY was responsible for formulating and implementing KCSO's policies, procedures, and/or established practices and/or ensuring that its officers are properly and adequately trained.  Defendant Stanley was responsible for the managerial decisions as they relate to KCSO's employees and/or agents, including subordinate Supervising/Policymaking Defendants and Defendant Deputies.  Defendant Stanley's acts and omissions were, at all times alleged, affirmatively linked to the behavior of subordinate Supervising/Policymaking Defendants and Defendant Deputies, in the sense that he encouraged, condoned, and/or acquiesced in their acts, omissions, and established practices.

8.  Defendant KEVIN COMPTON was responsible for formulating and implementing KCSO's policies, procedures, and/or established practices and/or ensuring that its officers are properly and adequately trained.  Defendant Compton was responsible for the managerial decisions as they relate to KCSO's employees and/or agents, including subordinate Supervising/Policymaking Defendants and Defendant Deputies.  Defendant Compton's acts and omissions were, at all times alleged, affirmatively linked to the behavior of subordinate Supervising/Policymaking Defendants and Defendant Deputies, in the sense that he encouraged, condoned, and/or acquiesced in their acts, omissions, and established practices.

COMPLAINT - 3

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

9. Defendant STEVE KEENY was responsible for formulating and implementing KCSO's policies, procedures, and/or established practices and/or ensuring that its officers are properly and adequately trained. Defendant Keeny was responsible for the managerial decisions as they relate to KCSO's employees and/or agents, including subordinate Supervising/Policymaking Defendants and Defendant Deputies. Defendant Keeny's acts and omissions were, at all times alleged, affirmatively linked to the behavior of subordinate Supervising/Policymaking Defendants and Defendant Deputies, in the sense that he encouraged, condoned, and/or acquiesced in their acts, omissions, and established practices.

10. Defendant SCOTT SOMERS was responsible for formulating and implementing KCSO's policies, procedures, and/or established practices and/or ensuring that its officers are properly and adequately trained. Defendant Somers was responsible for the managerial decisions as they relate to KCSO's employees and/or agents, including subordinate Supervising/Policymaking Defendants and Defendant Deputies. Defendant Somers acts and omissions were, at all times alleged, affirmatively linked to the behavior of subordinate Supervising/Policymaking Defendants and Defendant Deputies, in the sense that he encouraged, condoned, and/or acquiesced in their acts, omissions, and established practices.

11. Defendant NICHOLAS PRITCHETT is a KCSO Deputy who, at all times relevant hereto, was acting under color of law.

12. Defendant TIMOTHY LEWIS is a KCSO Deputy who, at all times relevant hereto, was acting under color of law.

13. Defendants JOHN DOES 1 - 10 (hereinafter "Defendants Doe") are subcontractors, employees, and/or agents of Mason County. Each Defendant Doe was within the scope of his/her employment at all times relevant hereto. It is believed most, if not all, of the Defendants Doe are residents of King County. These Defendants Doe knew and were

COMPLAINT - 4

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

deliberately indifferent and were negligent; acted in furtherance of an official and/or *de facto* policy or procedure of deliberate indifference and negligence; and/or were responsible for the promulgation of the policies and procedures and permitted the customs/practices pursuant to which the acts alleged herein were committed.  Their identities are unknown at this time and will be named as discovery progresses.

14. Each and every Defendant was personally involved in Plaintiffs' constitutional deprivations in that they: (1) participated directly in the alleged constitutional violation; (2) after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred, allowed the continuance of such a policy or custom, or ratified the acts of subordinates thereby establishing a policy or custom; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; and/or (5) exhibited deliberate indifference to Plaintiffs' rights by failing to act on information indicating that unconstitutional acts were occurring.

## II. JURISDICTION AND VENUE

15. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

16. Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391 because Defendants are situated in this judicial district and because a substantial portion of the events and omissions giving rise to this claim occurred in King County, Washington, within the Western District of Washington.

## III. STATEMENT OF FACTS

**A. T.J. MOLINA RECEIVES TEXT MESSAGES FROM RENEE AND MAKES CONTACT WITH DEPUTY PRITCHETT.**

17. Around 6:30 p.m. on October 21, 2016, Defendant Pritchett was parked at the powwow grounds on the Muckleshoot Indian Reservation ("Reservation") during his patrol shift,

COMPLAINT - 5

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

when Renee's boyfriend, T.J. Molina, approached him. After receiving several text messages from Renee, T.J. sought out Defendant Pritchett to talk about his concerns and ask for help.

18. Minutes earlier, at 6:21 p.m., Renee sent T.J. a text message: "[w]ell come and get the girls or call 911 I'm about to shoot myself."

19. Renee sent him another text message at 6:28 p.m. that said "[t]his is to show you I'm not lying," with a fuzzy photo of a superficial injury of unknown origin.

20. Worried about Renee, her children, and their unborn son—Renee was four-months pregnant at the time—T.J. sought KCSO's help.

21. Defendant Pritchett was familiar with both Renee and T.J. Defendant Pritchett had responded to incidents at Renee's home in which she was a victim of domestic violence, including when Renee's ex-boyfriend and the father of two of her children strangled her, as well as other "DV assaults where he was pretty brutal to her."

22. A few months prior to her death, Renee learned that this ex-boyfriend would soon be released from prison, so she obtained a Washington State issued concealed carry license and legally purchased a handgun from Sportsman's Warehouse in Federal Way, Washington.

23. Law enforcement records indicate that since 2005, Renee had twice been the victim of child abuse, a juvenile runaway four times, the victim of domestic violence nine times, and had restraining orders meant to protect her violated at least three times. Records also show Renee was involuntarily committed for a mental evaluation after making suicidal comments a few years prior.

24. T.J. showed Defendant Pritchett the text messages from Renee. Defendant Pritchett thought the picture T.J. showed Pritchett on his phone could be some kind of injury or "a photo off the internet," but was not sure.

COMPLAINT - 6

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

25. T.J. also told Defendant Pritchett at this time that Renee had access to a rifle and a handgun, which she had obtained the concealed carry permit for; had her two children with her; and that she was pregnant.

26. Although Renee was actively communicating from her cell phone, Defendant Pritchett chose not to obtain Renee or T.J.'s phone number before speeding off to Renee's house.

B. **DEFENDANT PRITCHETT CONTACTS DISPATCH AND ARRIVES AT RENEE'S HOME.**

27. Defendant Pritchett advised dispatch of a suicidal female possibly armed with a rifle, who had two children with her, at 6:37 p.m. Although T.J. had only shown him a single picture, Defendant Pritchett also advised "[s]he's texting *pictures* of fresh injuries, unsure who is injured."

28. Defendant Pritchett said nothing about the handgun.

29. Defendant Pritchett informed dispatch that he would be conducting a welfare check and provided Renee's full name and birthdate—*information he could recall from memory based on prior contacts*.

30. Defendant Pritchett arrived in Renee's neighborhood at 6:44 p.m. He approached Renee's home on foot to survey the area and search for any signs of distress coming from the home. He observed none.

31. Defendant Pritchett then returned to his vehicle to await backup, yet did nothing to prepare for engaging Renee: he did not reach out to T.J. or to Renee by phone, or otherwise attempt to gather more intelligence or formulate a plan. While waiting he also observed no signs of distress coming from the home.

C. **DEFENDANT LEWIS RESPONDS AND ARRIVES AT RENEE'S HOME.**

32. Defendant Lewis arrived on scene at approximately 6:45 p.m. Defendant Pritchett hastily told Defendant Lewis select information he had learned from T.J., the route they

COMPLAINT - 7

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

would take to approach Renee's house on foot, as well as the location of a large oak tree in Renee's front yard that Defendant Pritchett suggested could be a shelter from gunfire.

33. Critically, according to Ms. Davis' experts, Defendant Pritchett acted unreasonably by failing to:

- Tell Lewis that he had prior contacts with Renee and the nature of those contacts; that he had been inside Renee's home before and the layout of the house; that Renee was pregnant; and that Renee had a handgun as well as a concealed carry permit.

- Show Lewis the text message correspondence between T.J. and Renee or the photo of the superficial cut that T.J. showed Pritchett less than ten minutes earlier—in fact, Pritchett did not even tell Lewis about T.J.

34. Lewis failed to ask Pritchett for more intelligence about the situation. In turn, both Defendant Deputies failed to:

- Develop a plan for what to do with Renee's children if they entered the home, or what to do if they encountered Renee armed inside the home; the only plan the Deputies had developed prior to approaching Renee's home was to go in.

- Develop a plan on how to encounter an individual experiencing a behavioral crisis consistent with the little training they did have.

- Wait for the other *four* responding officers to arrive on scene or even check on their status prior to responding to the house, including their supervisor.

- Attempt to contact Renee or T.J. by phone prior to approaching the house.

35. Defendant Deputies evaluated this situation involving an armed suicidal female with two small children in the home *for less than a minute* before rushing to approach Renee's front door.

D. **DEFENDANT DEPUTIES RUSH TO RENEE'S DOOR, SCREAMING AND YELLING.**

36. Defendant Deputies approached Renee's home on foot at 6:52 p.m. They could not see into or hear any noise from the house, or anything that indicated anyone was in distress inside.

COMPLAINT - 8

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

37. Defendant Deputies began to pound loudly on the front door, siding, and windows of the home. They repeatedly and forcefully yelled "Sheriff's Office!," "It's the police!" and "Come to the door!"

38. At no point did Defendant Deputies announce words to the effect of: "Renee, this is a welfare check," "Renee, we're here to help you," or "Renee, we are here to check on you and your children."

39. Defendant Deputies also did not take into account the effect loud banging and knocking by two male police figures would have on a young pregnant woman in a suicidal state. They knocked, banged, and yelled for approximately four minutes. They did not attempt any other means of communication.

40. At 6:54 p.m., Defendant Lewis attempted to break into Renee's home by removing a screen on the living room window. As Defendant Lewis pried the screen off the window, he saw Renee's two children in the living room—uninjured—and asked them to open the door.

41. After Renee's three year-old opened the door, Defendant Deputies rushed into the home with firearms drawn and without a warrant.

42. Defendant Deputies did not wait for the other responding officers to arrive on scene, contact their supervisor, or gather any intelligence prior to entry.

E. **DEFENDANT DEPUTIES ENTER RENEE'S HOME.**

43. Defendant Deputies entered Renee's home at 6:56 p.m., immediately encountering her children.

44. Defendant Lewis placed the children behind him in the front door area of the house then turned his back to the children and walked back inside the house, leaving them unattended.

COMPLAINT - 9

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

45.     Defendant Deputies continued to scream and yell—guns drawn—but they heard no response.

46.     Now feeling insecure about the inadequate staffing they had in the home—having decided earlier not to wait for backup when they knew backup was en-route and just minutes away—Defendant Deputies rushed to "clear" the house.

47.     Defendant Pritchett reached the door to Renee's bedroom—where he knew she was, because one of her children had told him—kicked off a child safety device from the knob on the door, and called to Defendant Lewis.

48.     Defendant Lewis left the children in the front door area to join Defendant Pritchett in Renee's bedroom.

F.     **DEFENDANT DEPUTIES FATALLY SHOOT RENEE.**

49.     Defendant Deputies entered the bedroom and observed Renee lying in her bed covered in a blanket up to her neck staring blankly at the door.

50.     Defendant Deputies saw no evidence that she was injured or in distress.

51.     Instead of treating Renee like a barricaded subject, retreating to the safety of the hallway or considering a limited walk-way containment, Defendant Deputies aggressively shouted at Renee to show her hands; according to Defendant Lewis, Renee did not respond, while Defendant Pritchett recalls she said "no."

52.     Defendant Lewis pointed his firearm at Renee and Defendant Pritchett ripped the blanket off of her.

53.     Although Defendant Deputies each claim to have seen Renee with a gun, they recall things differently:

- According to Defendant Lewis: Renee had a gun near her right hand, "either laying on her bed or against her leg or somewhere down," with the muzzle facing the foot of the bed (which Defendant Lewis thought may have been unintentional).

COMPLAINT - 10

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

- According to Defendant Pritchett: Renee had a gun resting between her legs in her right hand.

54. Defendant Deputies reported that Renee had a magazine in her left hand, and claimed that Renee then raised the gun and somehow pointed it at both of them at the same time.

55. At that point:

- According to Defendant Lewis: Defendant Deputies each yelled at Renee to "drop the gun," then simultaneously fired; or

- According to Defendant Pritchett: Only Defendant Pritchett yelled "gun," he then moved and fired along with Defendant Lewis.

56. Less than one minute transpired between when the Defendant Deputies entered Renee's home to when they fatally shot her.

G. **RENEE DIES.**

57. After Defendant Deputies shot Renee, they heard her two children screaming while running out of the house, at which point Defendant Lewis left Defendant Pritchett alone in the bedroom with Renee.

58. While outside the home, Defendant Lewis encountered Auburn Police Officer Derek Pedersen, who took the hysterical children to his vehicle.

59. There also are two stories about what happened to Renee's gun—the Deputies' version and Officer Pedersen's account:

- According to Defendant Deputies: Defendant Pritchett put Renee's gun in his utility belt as Defendant Lewis reentered the bedroom—although Defendant Lewis did not see Defendant Pritchett pick the gun up off the bed and does not remember a conversation about the gun that Defendant Pritchett claims they had; or

- According to Officer Pedersen: Renee's gun was still in her hand while she was on the floor by the time he entered to the bedroom along with Defendant Lewis.

COMPLAINT - 11

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

60. Either way, Officer Pedersen moved the bed away from Renee so that she could receive medical attention. Renee was still breathing.

61. Before that point, neither of the Defendant Deputies rendered medical aid to Renee.

62. At 6:59 p.m., Defendant Pritchett *finally* called for medical aid to enter, at which point Defendant Deputies went outside and talked to each other about the shooting.

63. Less than twenty minutes elapsed between when T.J. relayed his concerns to Defendant Pritchett and when Renee was shot.

64. Less than a minute elapsed between when Defendant Deputies arrived at the home and approached the front door.

65. About one minute elapsed between when Defendant Deputies entered the home and opened fire on Renee.

66. Renee had no alcohol or drugs in her system.

67. As noted by the King County Superior Court:

> [T]hese two deputies went to Ms. Davis's home knowing she had a firearm -- was lawfully in possession of a firearm, knowing she was -- at least one of them knew she was a domestic violence victim, and knowing that she was suicidal and threatening to kill herself. It -- and taking the facts as presented by the plaintiffs, which I don't think are hugely in dispute, **it seems like they did everything possible to escalate the situation as opposed to taking reasonable steps to de-escalate the situation and to prevent the need to shoot Ms. Davis**. . . . [T]hey break down the door to her bedroom. They see her there and they tell her to take the covers off. And when she says no, they yank them off -- and these are not the actions of people who are there for her welfare. . . . What if they were to bring in someone who is good at talking to despondent people? Whether it's an officer with the appropriate training or a mental health professional or something like that. I mean, they've seen her. She's obviously alive. The children are obviously safe. They can remove the children from the home for their safety if need be. Why do they have to provoke a confrontation? . . . **[A]t the very least it's an issue of fact whether the deputies acted reasonably up to the point that they used deadly force.**

COMPLAINT - 12

# IV. CAUSES OF ACTION

A. **FIRST CAUSE OF ACTION – DEFENDANT DEPUTIES – UNREASONABLE USE OF FORCE IN VIOLATION OF THE FOURTH AMENDMENT.**

68. The acts and failure to act described above were done under color of law and are in violation of 42 U.S.C. § 1983, depriving Renee of her civil rights.

69. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures of the person. This protects citizens and members of the community and prohibits the government from using excessive force against those citizens.

70. In addition, children have a constitutionally protected interest under the Fourteenth Amendment to the companionship and society of their parents.

71. These constitutional rights are long-standing and were clearly established at all times relevant hereto.

72. Indeed, it has been well established, for decades, that the reasonableness of an officer's use of force depends not only on whether the officers were in danger at the precise moment that they used force, but also on whether the officers' own reckless or deliberate conduct during the seizure unreasonably created a percieved need to use such force.

73. Defendants violated Renee's and her children's constitutional rights by using excessive, deadly force against Renee—as set forth herein, and in other respects as well.

74. As a result of these violations, Renee experienced increased terror and anxiety before she was shot and killed.

75. As a result of these violations by Defendants, Renee's children lost their mother and were deprived of the familial relationship.

76. Defendants' acts and omissions were unreasonable under the circumstances, and created their alleged need to use force.

COMPLAINT - 13

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

77. Defendants' decision to shoot and kill Renee was particularly unreasonable under the circumstances. Renee was experiencing a mental health crisis and did not pose any threat to the officers before or after they entered her home. Without obtaining any information from anyone, Defendants charged into the bedroom screaming, endangering themselves and Renee.

**B. SECOND CAUSE OF ACTION – KING COUNTY AND SUPERVISING/POLICYMAKING DEFENDANTS – UNCONSTITUTIONAL POLICIES, ESTABLISHED PRACTICES, TRAINING, AND SUPERVISION PURSUANT TO *MONELL V. DEPT. OF SOCIAL SERVS.*, 436 U.S. 658 (1978).**

78. The acts and failure to act described above were done under color of law and are in violation of 42 U.S.C. § 1983.

79. King County and Supervising/Policymaking Defendants, with deliberate indifference, failed to adequately train KCSO law enforcement officers and failed to adopt and implement policies for, among other things, dealing with citizens experiencing a mental health crisis.

80. King County and Supervising/Policymaking Defendants, with deliberate indifference, failed to adequately train KCSO law enforcement officers and failed to adopt and implement policies for, among other things, the use of de-escalation techniques, crisis intervention techniques, non-lethal tactics, and the decision-making process that should accompany the use of lethal force.

81. The failure of King County and Supervising/Policymaking Defendants to train amounts to deliberate indifference to the rights of the persons with whom KCSO law enforcement officers regularly come into contact.

82. It was highly predictable that these failures would result in constitutional violations, like those that occurred here. The death of Renee was the foreseeable consequence of King County and Supervising/Policymaking Defendants' failure to equip its law enforcement officers with the necessary tools to handle recurring situations, such as those that involve citizens

COMPLAINT - 14

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

in psychological and/or mental distress and those that require the use of de-escalation techniques, crisis intervention techniques, non-lethal tactics, and the appropriate decision-making process that should accompany use of lethal force.

83. The action of Defendant Deputies, which deprived Renee and her children of their constitutional rights, conformed to policy, custom, and established practice of King County and/or were ratified by Supervising/Policymaking Defendants.

84. As a direct and proximate result of the deliberate indifference of Defendants, as described above and in other respects as well, Renee died a terrible and easily preventable death. She suffered pre-death pain, anxiety, and terror, before and after being shot, and leaving behind a loving family.

C. **THIRD CAUSE OF ACTION – ALL DEFENDANTS – UNCONSTITUTIONAL DEPRIVATION OF RENEE'S CHILDREN'S LIBERTY INTERESTS IN THE COMPANIONSHIP OF THEIR MOTHER UNDER THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE**

85. The acts and failure to act described above were done under color of law and are in violation of 42 U.S.C. § 1983.

86. Deputy Defendants were subjectively aware that Renee was experiencing a mental health crisis. Deputy Defendants were responding to Renee's attempted suicide, yet disregarded this affliction by failing to take reasonable measures to abate it. In fact, their actions aggregated the symptoms and caused her death.

87. As a direct and proximate result of the deliberate indifference of all Defendants, described above, Plaintiffs T.B., R.M., and B.M. have suffered the loss of familial association with Renee, in violation of her Fourteenth Amendment rights.

88. Plaintiffs T.B., R.M., and B.M. have suffered, and continue to suffer, extreme grief and harm due to mental and emotional distress as a result of Renee's wrongful death.

COMPLAINT - 15

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

D.  **FOURTH CAUSE OF ACTION – DEFENDANT KING COUNTY – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

89. King County discriminated against Renee by reason of her serious medical conditions, denying her the benefits of the services programs and activities to which she was entitled, including but not limited to the right to be free of discriminatory or disparate treatment by virtue of her serious illnesses.

90. King County denied Renee access to medical services that would have prevented her death.

E.  **FIFTH CAUSE OF ACTION – DEFENDANT KING COUNTY – VIOLATION OF THE REHABILITATION ACT**

91. Renee is a qualified individual with a disability under the meaning of the Rehabilitation Act.

92. By reason of his disability, Renee was excluded from participation in or was denied the benefits of the services, programs, or activities of a public entity, specifically her serious mental disability, including, inter alia, denying her a reasonable accommodation with respect to her serious medical needs by refusing to provide services that could have saved her life.

93. As a direct and proximate result of the this unlawful conduct by King County, Renee suffered grievous bodily harm and emotional distress and was deprived of his right to have a reasonable accommodation of her severe disability as guaranteed under §504 of the Rehabilitation Act.

### III.   JURY DEMAND

94. Plaintiffs hereby demand a jury.

COMPLAINT - 16

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

### IV.   PRAYER FOR RELIEF

95. Damages have been suffered by all Plaintiffs and to the extent any state law limitations on such damages are purposed to exist they are inconsistent with the compensatory, remedial and/or punitive purposes of 42 U.S.C. § 1983, and therefore any such alleged state law limitations must be disregarded in favor of permitting an award of the damages prayed for herein.

96. WHEREFORE, Plaintiffs request a judgment against all Defendants:

(a) Fashioning an appropriate remedy and awarding general, special, and punitive damages, including damages for pain, suffering, terror, loss of consortium, and loss of familial relations, and loss of society and companionship under Washington State law and pursuant to 42 U.S.C. §§ 1983 and 1988, in an amount to be proven at trial;

(b) Awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, or as otherwise available under the law;

(c) Declaring the defendants jointly and severally liable;

(d) Awarding any and all applicable interest on the judgment; and

(e) Awarding such other and further relief as the Court deems just and proper.

DATED this 7th day of October, 2019.

GALANDA BROADMAN, PLLC
s/Gabriel S. Galanda
Gabriel S. Galanda, WSBA #30331
s/Ryan D. Dreveskracht
Ryan D. Dreveskracht, WSBA #42593
s/Bree R. Black Horse
Bree R. Black Horse, WSBA #47803
Attorneys for Plaintiffs
P.O. Box 15146 Seattle, WA 98115
(206) 557-7509 Fax: (206) 299-7690
Email: gabe@galandabroadman.com
Email: ryan@galandabroadman.com
Email: bree@galandabroadman.com

COMPLAINT - 17

Galanda Broadman PLLC
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509